Good morning, your honors. Cynthia Kagiwara on behalf of defendant appellant Roman Contreras. What I want to emphasize here today in this appeal is this is a case about a sloppy investigation. We have three agents or officers participating in this case who all engaged in sloppy behavior, which leads to the problems we have in this case with the government showing reasonable suspicion and then probable cause. First of all, we have agent Jones who's an experienced DEA agent with several years of experience, but he still has a written reprimand for sloppiness in another case with evidence. And as an example of his sloppiness in this case, he couldn't even say the number of tipsters that were involved in this case. You know, first it was two, then it was two. But I think the main problem with agent Jones and his sloppiness is he touched and carried the very bag during the investigatory stop, which was highly improper because he only could touch and carry the bag in order to search for weapons because it was a Terry stop. May I ask you a question? Your time is so Contreras argues Simon, the drug detection dog, alerted to his carry-on bag because one of the narcotics officers, Jones, touched and handled it before Simon sniffed it. Did Krung Contreras raise his challenge below? And if not, is this argument waived on appeal? Well, Your Honor, it wasn't specifically argued below, but the government has not brought this up in his answering brief. He has not brought up waiver in his answering brief, and so the government has waived waiver. And I believe United States v. Castile-Marin and United States v. McHenry makes it clear that the government must respond in their answering brief. The government never even addressed this argument. All right, thank you. With respect to the bag, the evidence as I read it is that the officer asked him to come over here where they're going to move to another location, and then the bag gets somehow caught on Mr. Contreras. Is that right so far? That's correct. And it doesn't get unhooked, so to speak, and detached until they sit down, correct? Correct, that's what the evidence is. And the officer's just, he was helping. He wasn't basically taking possession of the bag, but he was helping because it's now kind of attached to Mr. Contreras, and instead of like swinging freely like you normally would have a carry-on bag. And the district court basically said he was helpfully trying to untangle the bag. We don't have, what's wrong with that finding? Even if he was trying to help untangle the bag, the problem is he could have contaminated the bag, and this is government's own witness testified. The dog, Simon, alerts to odors, you know, and of course... Well, he could, a lot of things could have happened. He could have deposited drugs in it, he could have untangled it. I mean, there's a lot of hypotheticals. Is there any evidence here that would upset the district court's findings? Well, the fact that the agent shouldn't have been touching the bag at all, and by touching it, the agent contaminated it. No, no, he's not supposed to touch it because there's, because he might contaminate it, but it doesn't follow that he did contaminate it because he was, there was a reason why he was touching. Isn't that the problem? Right, but again, you know, the government has not responded to the argument that we raised in our brief. They just said, you know, they didn't even respond to the argument about it being a possible contamination, and so... Do you have any evidence? What would we look to? I mean, because we're, what we're looking to here on the find, and we, of course, we're looking de novo on search issues, but we're looking to the district court's findings for clear error. Is there anything in the record that would support your view other than lawyer argument or speculation? Well, the fact that there were no drugs found in the bag, even though the dog alerted positively to the bag, so somehow that bag was contaminated with the odor of drugs, and as the government's expert witness testified, Mr. Nakamura, the dog only alerts to the odor, not to the drugs themselves, so somehow the odor of drugs got on that bag, but there is... Otherwise, there were drugs in other luggage of the... Right, and those bags, the dog alerted negatively to those bags, so, you know, again, that also kind of brings up the question of how reliable is Simon as a drug dog, given that he alerted positively to a bag that didn't have any drugs in it, and alerted negatively to bags that did have drugs in them. Well, moving right along, since your time is fleeting, in Florida versus Harris, the Supreme Court held the dog's alerts may be called into question if he's working under unfamiliar conditions. What is your best case, factually, that supports your contention that Simon was working under unfamiliar conditions? Well, Harris itself supports that, and again, the facts of the case, as Simon's handler and then Mr. Nakamura, the certifier, testified, he doesn't normally work in this kind of situation. In fact, I think the amount of time that he spent in this kind of environment was 3.75%. And so, even if Simon could be found reliable in most circumstances, he was working in an unfamiliar circumstance here, which, again, undermines his reliability. And additionally, the records show that he only had tested luggage in 0.16%, so these were definitely unfamiliar circumstances. But, you know, Harris also goes on to caution us about over-reading misses in the field, and if you look at the miss here, he may well have smelled odor, but we don't know. I mean, that may have well been an actual, not a false positive, but a documented positive, even though drugs weren't found in that bag. So, you know, it seems hard to challenge the dog when, in fact, what was found were the drugs in the checked bags, right? I'm sorry, Your Honor, I didn't quite... Well, he could have tested, he could have found positive for odor there, which doesn't mean that drugs hadn't been in that bag. Right, but it also means it could have been contaminated by something else in his... But that could have, we've already talked about, because we don't have any evidence of what could have contaminated it. Right, right. I mean, if we had evidence that the officer might have planted something, which we've seen in some cases, that would be good evidence. Right, well, I would just go back to the fact that one agent, and maybe even two, were touching the bag. And again, going back to the sloppiness, the Kauai Police Department officer, Oliveira, he wasn't even sure if he touched the bag or not, but Agent Jones said that he thought that Oliveira had also touched the bag. So you have an agent and an officer touching the bag. I don't know what your argument is. Okay. Is it that there was never probable cause because the dog was not reliable? Was it that they were, that they shouldn't have touched it and we are to assume that they can, without any evidence, that they can, that the officer contaminated it? Well, they shouldn't have touched it, and so therefore that undermines... What do you do with that fact? That undermines Simon's reliability, because they did something they weren't supposed to do. They were touching a bag clearly beyond the scope of an investigatory stop. And then, lo and behold, Simon tests alerts positive to the bag. So that undermines his reliability, because, you know, obviously after they searched the bag, there were no drugs in it. You want to reserve the remaining time? Yes, Your Honor, if I could. Thank you. May it please the Court. Good morning. Tom Ehrlich for the United States. Your Honor, the United States' position is that this was on the date of March 24, 2015, an investigatory stop that then turned into a probable cause, reason to arrest. The agent at DEA at the La Jolla Airport had a bunch of information from different sources, and then based upon his substantial experience in following the defendant, when the defendant didn't go into the baggage claim area, instead walked straight out and went to the curb area, even though he had checked bags and they determined that he had checked bags, that the defendant continued to turn around and look at the area, look behind him. As the agent explained, that to him was counter surveillance. The defendant was looking to see if law enforcement officers were around. They had detailed information on the tip, on the bag that was supposed to have the narcotics inside. Let me ask you a question about that. One of the tipsters said he would be flying in, I believe, on Delta or American. Delta. Delta. And the agent, one of the affidavits says they confirmed with the airline that it was on there. What was it they confirmed? Because on his name tag, it says Contreras. And his name, of course, is Contreras. So my question was, is there anything in the record that shows us whether they confirmed that Contreras versus Contreras was on that airline? What confirmed, I believe, Your Honor, is that the picture was sent by an LAX DEA agent to Agent Jones, a photograph of Contreras at the airport. It was sent to and believed it was similar in appearance to the CJIS, the criminal justice information sheet, rap sheet, that they had in Hawaii. It was a photo more than the name that was confirmed. A photo and the physical description that they previously had, and Jones, Agent Jones, verified that when he saw him come off the jetway from there. Then, of course, that was added to by the Jones walking up to the lady, or the lady walking up to Jones, coming out of the black tow truck that they had seen circling the Lihue Airport, and then parked curbside, and Contreras went to that. The tow truck was one of the tipsters points as well. Both tipsters, yes, yes, Your Honor, including the tipster, including the individual who was interviewed and said he bought drugs from a person in the black tow truck. Counsel, assuming that Simon was unreliable, under the totality of the circumstances, what does it do to the probable cause inquiry? We conceded, Your Honor, at argument, as we concede today, that without the dog alert, we would not have had probable cause to arrest. Certainly reasonable suspicion to detain and for an investigatory stop. So we concede that the dog alert is essential for the probable cause, but we believe also, Your Honor, we submit to Simon and Arnold Kiyob-Yob, the handler, the Kauai PD handler, is beyond reproach. That the district court went through that. The defense had adequate opportunity to challenge the reliability, to challenge the fast performance. They subpoenaed the handler, Arnold Kiyob-Yob. They subpoenaed Sergeant Kiyob-Yob. His training records, the defense had those. We turned those over. They put that into their exhibits. The seizure logs from Simon, that was exhibit five that they had. They had opportunity to question the expert that we called, retired officer Nakamura, who was the California narcotics canine officer certifying individual that had seen, worked with Kiyob-Yob before and had certified him the month before in February of 2015. We concede that that was needed for a probable cause determination to do the arrest and we submit there was that. Besides what I've mentioned, you had an uncooperative individual that was walking away. One of the court's questions was, well you had checked bags, why you were walking away? He said, well I had to go to the car or the truck to get something to cut the string that had held my bag to my side. The district court asked him about that. The district court also found that the defendant's explanation, the defendant did testify, and his explanation for his encounter with the officer, with the DEA agent, was not credible. The court did not find him believable. The record showed that the bag that was stuck on Mr. Contreras, Mr. Contreras asked for assistance in getting the bag unstuck and in walking to the seat, the bench, 10 or 15 feet away, it then became unstuck. So there was no frisk of the bag. It was helping Mr. Contreras to the seat after he'd been reasonably, temporarily detained to take the bag off his person. At what point was there full probable cause in your view? When the dog alerted on the bag, Your Honor. That's, and then of course, by then they did the arrest and they found a slip of paper in the wallet with the name Contreras, Ramon Gabriel Contreras, and the PNR, which matched the tag, the luggage tags on the checked-in bags, which then were subject to the search warrant the next day, and the drugs were found in that search warrant. Unless the courts have any questions, unless the court has any questions for me, our position is that the search warrant was based on probable cause, the court's ruling on the facts were not clearly erroneous, and that it was an investigatory stop based upon reasonable suspicion that then blossomed into probable cause. Thank you. Thank you, Your Honor. Your Honor, I just want to correct a couple things that the prosecutor stated. First of all, Jones said he didn't notice that the name was Contreras instead of Contreras on the manifest. Second, it wasn't both tipsters who identified Mr. Contreras as driving a black tow truck, it was only one. Third, Jones testified at the suppression hearing that he checked with Kauai Police Department, they told him that no one had bought drugs from Contreras. So I don't know where this is coming from now, where Mr. Mulek is saying that there was evidence beforehand that somebody had bought drugs from Contreras. And then the fact that Mr. Contreras was walking away and was deemed to be uncooperative, that's wrong because he was told he was free to leave. And under Florida v. Bostic and United States v. Fuentes, if somebody is told they're free to leave, they can leave. So to then state that he's uncooperative and that provided some of the probable cause for the search warrant is incorrect. As the government has conceded, really this all comes down to whether the dog sniff was reliable or not. Because without the dog sniff, there's no probable cause. We would argue, we've argued that the dog sniff was not reliable under these particular circumstances, even if Simon was a reliable dog normally. And therefore we're asking the court to vacate and remand with instructions to grant the suppression motion. Thank you. Case just argued of United States v. Contreras is submitted. Thank both of you for your arguments this morning. We'll now hear your argument in United States v. Olatoa.
judges: Schroeder, D.W. Nelson, McKeown